Maupin, J.,
with whom Shearing and Agosti, JJ., agree, concurring:
We agree that the petition for writ of mandamus or prohibition should be denied. Subject to the reservations articulated by the majority opinion that do not apply to this case, the language of NRS 49.275 is plain and comprehensive: “No reporter . . . may be required to disclose any published or unpublished information obtained in [a professional capacity] ... in any legal proceedings . . . .” This language clearly applies to the deposition questioning of Glen Puit, the real party in interest in the underlying matter. The district court properly denied the motion to compel.
We also conclude that there are other important reasons why we should not grant extraordinary relief in this matter.[1]
The instant petition is one of three applications for extraordinary relief brought by these petitioners challenging separate orders entered by the district court in the underlying matter. All were lodged within a six-month time frame. One of the petitions involved a clearly valid denial of a motion for partial summary judgment. The second challenged a refusal to disqualify opposing counsel. We denied intervention in both of the other matters. It is only this court’s desire to clarify the rights of press representatives under the shield statute that warrants more specific consideration of this third application.[2]
*103 The litigation that is the subject of the instant petition for extraordinary relief arises from a terrible motor vehicle accident involving multiple fatalities. Petitioners are the heirs of the persons killed in that accident. The facts bearing on this application are set forth below.
Responding to a dispatch call shortly after midnight on September 21, 1996, Nevada Highway Patrol Trooper John Kennedy found Michael Estrada outside of his vehicle sitting on the side of a limited access freeway in Clark County, Nevada. Based upon his observations and conversations with Estrada, Trooper Kennedy concluded that Estrada was intoxicated. Not observing Estrada behind the wheel, Trooper Kennedy ordered Estrada’s nearby vehicle towed and took Estrada to his place of residence. At his deposition, Kennedy conceded his belief that Estrada was under the influence of alcohol. He also testified that he was the only trooper to respond to the scene where Estrada was located.
About eleven hours following the interaction with Trooper Kennedy, Estrada reclaimed his vehicle from the towing company. Shortly thereafter, Estrada collided with a vehicle occupied by Felipe Diaz, Miguel Alcantara and Eva Alcantara, all of whom were killed. Tests performed after the accident confirmed that Estrada was intoxicated. An expert retained by the petitioners has opined that Estrada’s blood alcohol content was about .263% at the time of Trooper Kennedy’s encounter with Estrada. Petitioners filed suit for wrongful death damages against the towing company and the Nevada Highway Patrol. The crux of petitioner’s lawsuit against the highway patrol is the failure of Trooper Kennedy to take Estrada into protective custody under NRS 458.270.[3]
*104 Following the accident, real party in interest Glenn Puit, a Las Vegas Review-Journal news reporter, interviewed Trooper Steve Harney, a Nevada Highway Patrol Public Information Officer, about the accident. Thereafter, Puit wrote a series of articles, which, inter alia, quoted Harney as saying that “troopers” responded to the scene and found that Estrada was “highly” intoxicated. At his deposition, Harney could not clearly recall what he said to Puit with regard to Kennedy’s version of his encounter with Estrada and that he, Harney, would defer to Puit as to what was said in the interviews about these particular factual issues.
Petitioners contend that several of Harney’s statements in the articles constitute admissions that are directly relevant to the issue of liability against the State and the Nevada Highway Patrol. They primarily contend that these statements “refute” Kennedy’s testimony that he was alone and that Michael Estrada was ‘ ‘not intoxicated or, in his opinion, under the influence of any substance, particularly alcohol at the time of their interaction some twelve hours before the accident.”[4] They also contend that they have no *105 other means by which to effect this impeachment or corroborate the testimony of their expert on blood alcohol levels. This concern is not, in our view, justified.
First, Harney’s purported statement to Puit that “troopers” responded to the original confrontation with Estrada is clearly stated in, the articles. Petitioners are entitled to cross-examine Harney about the use of the plural rather than the singular in the article, i.e., whether, in fact, Harney told Puit that “troopers,” rather than a “trooper” responded to the scene. The use of the plural in the article and the significance of the possibility that more than one trooper responded to the original confrontation may then be argued by both sides to the ultimate fact finder. It does not, however, seem to the objective observer that Puit’s use of the term “troopers” in discussing Harney’s version of the'highway patrol’s first encounter with Estrada creates a clear contradiction of Kennedy’s testimony.[5] This does not necessarily mean that petitioners should not pursue the possibility of a contradiction; however, it does not appear that this testimony is the lynchpin of petitioner’s liability case against the Nevada Highway Patrol. Certainly, an issue of this magnitude should not be the subject of a claim for extraordinary relief.
Second, petitioners claim that Kennedy must be impeached on the question of Estrada’s intoxication is most surprising. Contrary to the portion of the petition quoted above, Kennedy unequivocally conceded his belief that Estrada was drunk at the time of their interaction, twelve hours prior to the actual accident. The fact that Kennedy did not use the term ‘ ‘highly’ ’ intoxicated in his testimony does not justify our intervention via extraordinary writ to force a newspaper reporter to testify in violation of the state’s “shield law.” Also, Kennedy can be cross-examined as to whether Estrada’s state of intoxication justified or mandated use of the protective custody provisions of NRS 458.270.[6] Clearly, the evidence given by Trooper Kennedy confirms rather than contradicts petitioner’s expert testimony relative to Estrada’s blood alcohol levels.[7] Finally, Harney is still subject to cross-examination with *106 regard to the articles and Nevada Highway Patrol policies with regard to such situations.
In Shoen v. Shoen, 48 F.3d 412 (9th Cir. 1995), the United States Court of Appeals for the Ninth Circuit discussed a situation in which it felt forced disclosure of press information might be appropriate within the context of the First Amendment of the U.S. Constitution. The Ninth Circuit concluded that disclosure of press materials should be the exception and not the rule:
[W]here information sought is not confidential, a civil litigant is entitled to requested discovery notwithstanding a valid assertion of the journalist’s privilege by a nonparty only upon a showing that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case.
Shoen, 48 F.3d at 416.[8]
In the present case, the evidence sought has only marginal importance in the matter pending in district court. Alternatives available to these petitioners demonstrate that their claimed need for disclosure is far outweighed by the need to protect the press under either the shield statute or the First Amendment to the U.S. Constitution.

CONCLUSION

We therefore conclude that the testimony sought from the real party in interest, Puit, is not so essential to petitioner’s lawsuit as to justify a grant of extraordinary relief from this court. Further, the repeated resort by these petitioners to extraordinary remedies serves only to seek our “micro-management” of an ongoing piece of district court litigation. We realize that this case is most impor *107 tant to the petitioners herein. However, the need for extraordinary relief has not been demonstrated in any of their petitions.[9]

This matter was originally submitted to the southern panel of this court for decision without oral argument. I was against intervention at that time for the reasons set forth below in this separate opinion. This would have left in place the protections extended to the real party in interest by the district court.

In one of the separate orders we admonished counsel with regard to these applications. The resources of the court should not be routinely expended on an interlocutory basis to address grievances with orders handed down in the ordinary course of district court litigation. Such matters should be resolved on direct appeal unless the standards for extraordinary relief can be met. *103 None of these applications meet these standards. See, e.g., State ex rel. Dep’t Transp. v. Thompson, 99 Nev. 358, 662 P.2d 1338 (1983).

The version of NRS 458.270 in effect as of the date of this accident stated:
1. Except as provided in subsection 7, a person who is found in any public place under the influence of alcohol, in such a condition that he is unable to exercise care for his own health or safety or the health or safety of others, must be placed under civil protective custody by a peace officer.
2. A peace officer may use upon such a person that kind and degree of force which would be lawfiil if he were effecting an arrest for a misdemeanor with a warrant.
3. If a licensed facility for the treatment of persons who abuse alcohol exists in the community where the person is found, he must be delivered to the facility for observation and care. If no such facility exists in the community, the person so found may be placed in a county or city jail or detention facility for shelter or supervision for his own *104 health and safety until he is no longer under the influence of alcohol. He may not be required against his will to remain in either a licensed facility, jail or detention facility longer than 48 hours.
4. An intoxicated person taken into custody by a peace officer for a public offense must immediately be taken to a secure detoxification unit or other appropriate medical facility if his condition appears to require emergency medical treatment. Upon release from the detoxification unit or medical facility, the person must immediately be remanded to the custody of the apprehending peace officer and the criminal proceedings proceed as prescribed by law.
5. The placement of a person found under the influence of alcohol in civil protective custody must be:
(a) Recorded at the facility, jail or detention facility to which he is delivered; and
(b) Communicated at the earliest practical time to his family or next of kin if they can be located and to the division or to a local alcohol abuse authority designated by the division.
6. Every peace officer and other public employee or agency acting pursuant to this section is performing a discretionary function or duty.
7. The provisions of this section do not apply to any driver apprehended or arrested for the offense of operating a vehicle under the influence of intoxicating liquor or controlled substances, pursuant to Chapter 484 of NRS.
(Emphasis added.) Whether these provisions create a legal duty to third parties is not now before us.

This quotation is taken from the instant petition and petitioner’s formal written “Objection to Discovery Commissioner’s Report and Recommendations” filed in district court.
The petition includes quotations from Harney’s deposition wherein he denies the accuracy of Puit’s article stating that Estrada had been questioned by state “troopers” for suspicion of drunk driving. Harney explained the inaccuracy by stating that the official response was to a person sitting outside *105 of a stopped vehicle. In any case, the questions posed by Trooper Kennedy to Estrada would certainly qualify as inquiries in connection with possible drunk driving. Thus, petitioners do not cite this conflict as creating a need for extraordinary relief in this case.

Harney testified at his deposition that his use of the term “troopers,” rather than “trooper,” was generic, i.e., that he always referred to NHP trooper responses in terms of “troopers,” even when only one officer was involved.

See comments in note 3.

Petitioners contend below that the impeachment of Kennedy is important to corroborate their toxicology expert. Again, Kennedy took Estrada home because he was intoxicated. In any event, the circumstances of Kennedy’s *106 encounter with Estrada leaves little doubt of the advanced state of Estrada’s intoxication.
In this connection, petitioners alleged in the district court and allege here that “it was later determined” that Estrada’s blood alcohol level at the time of the encounter with Trooper Kennedy was .263%. Without commenting on the validity of this finding by petitioner’s expert, and certainly conceding Trooper Kennedy’s agreement that Estrada was intoxicated, it seems somewhat excessive to blithely state that a person’s blood alcohol level some twelve hours before testing has been “determined.” We raise this point only to underscore what appears to be a tendency by petitioner’s counsel to overstate propositions urged to us.

The Nevada shield statute provides greater protection to the press than that provided under the First Amendment to the U.S. Constitution. Thus, it is unnecessary to resolve this matter on constitutional grounds. However, an analysis of the First Amendment balancing test relied upon in Shoen underscores our reasons for denying extraordinary relief.

We also note that petitioners sought sanctions in district court against the real party in interest’s counsel in connection with his position that the shield statute protected him from having to testify in the matter below. The repeated petitions for extraordinary relief, a spurious request for sanctions and what we perceive to be a chronic tendency to overstate their positions seems to suggest that this is all part of an overly aggressive litigation strategy. We can only express our hope that petitioner’s counsel will reconsider his approach to the prosecution of this case.